# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DERRICK AYLOR** \*<br>\*<br>    Petitioner     \*<br>\*<br>v.     \*<br>\*<br>**UNITED STATES OF AMERICA** \*<br>\*<br>    Respondent     \* | **Civil No.:**    PJM 10-1469<br>**Crim. No.:**   PJM 08-0489 |

## MEMORANDUM OPINION

Derrick Aylor, proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence [Paper No. 36]. Having considered the Motion and the Government's Opposition thereto, the Court **DENIES** the Motion.

## I.

Aylor pleaded guilty to: (1) bank robbery in the District of Maryland in violation of 18 U.S.C. § 2113; (2) bank robbery in the Eastern District of Virginia; and (3) violation of conditions of supervised release imposed in a prior case.

During plea discussions, Aylor sought to cooperate with law enforcement in exchange for a reduced sentence. However, after debriefing Aylor, the Government decided that the cooperation he could provide was insufficient to warrant a downward departure in his sentence. Accordingly, the parties signed a non-cooperation plea agreement, in which Aylor waived certain rights to appeal and expressly acknowledged that all promises made pursuant to the plea agreement were contained therein. Moreover, during his plea colloquy, Aylor confirmed that the plea agreement contained all the promises made to him, that he was entering the plea agreement voluntarily and without coercion, and that he was satisfied with his counsel's performance.

Eventually, the Court sentenced Aylor to a 71-month term of incarceration, followed by a 3-year term of supervised release. Aylor subsequently appealed the Court's sentence to the Fourth Circuit, arguing that the Government had orally modified the written plea agreement to include a promise to allow him to cooperate in the future in exchange for a reduced sentence. The Fourth Circuit dismissed Aylor's direct appeal, finding that the Government had not orally modified the plea agreement, that the agreement had therefore not been breached, and that Aylor's waiver of appeal was valid. *See United States v. Aylor*, Nos. 09-4569 & 09-4577, 2010 WL 1511416, at *2 (4th. Cir. Apr. 16, 2010).

Following dismissal of his direct appeal, Aylor filed the instant Motion to Vacate, pursuant to 28 U.S.C. § 2255.

## II.

In his Motion, Aylor argues that the Government breached his plea agreement, that his plea was coerced, that counsel rendered ineffective assistance, and that the Government acted in bad faith when it did not provide him with an opportunity to cooperate.

First, Aylor argues the Government breached the plea agreement when it did not give him additional opportunities to cooperate. He says that the parol evidence rule should not be rigidly applied to his plea agreement because his constitutional rights are at stake. *See United States v. Wood*, 378 F.3d, 342, 348 (4th Cir. 2004); *Kingsley v. United States*, 968 F.2d 109, 115 (1st Cir. 1992).[1] Accordingly, Aylor contends that parol evidence, in the form of oral, on-the-record

---

[1] Plea agreements are governed, in part, by contract law. *See Puckett v. United States*, 129 S. Ct. 1423, 1430 (2009) (internal citation omitted). When there is a written, finalized contract, courts will generally not consider parol evidence—evidence extrinsic to the contract that contradicts the contract's written terms—of an agreement if that agreement is of the type one would expect to find in the written contract. *See, e.g.*, *United States v. Cohen*, 459 F.3d 490, 495 (4th Cir. 2006). Plea agreements usually contain an integration clause—an express statement in the written agreement saying that all terms of the agreement are contained therein—thus further undercutting any argument to admit parol evidence. Here, Aylor argues that because his constitutional rights are at stake, this rule should not be rigidly applied.

statements by the Government that expressed an openness to his possible future cooperation, should be considered as evidence that his written plea agreement was thereby modified, requiring the Government to give him additional opportunities to cooperate, and that the Government therefore breached the plea agreement when it declined to give him those opportunities.

Second, Aylor argues that all three of his attorneys—Mark Carroll, Teresa Whalen, and Anthony Martin—provided ineffective assistance in violation of the Sixth Amendment to the United States Constitution. Specifically, he submits that: (1) Carroll coerced him into signing a plea agreement by urging him to accept the non-cooperation agreement, despite knowing that Aylor wanted to provide more information to the Government; (2) Carroll ignored Aylor and only corresponded with him one time between June 2008 and November 2008; (3) Carroll failed to promptly arrange for Aylor to provide information to the Government in exchange for a reduced sentence; (4) Carroll did not explain to Aylor that he could withdraw his plea before sentencing; (5) Whalen, who became Aylor's counsel after he terminated Carroll, was unprepared for sentencing because she lacked full knowledge of Aylor's prior attempts to cooperate; (6) Whalen did not ask for a continuance before sentencing when Aylor requested she do so; (7) Whalen failed to move for an evidentiary hearing to investigate the alleged bad faith in the Government's failure to debrief Aylor further; (8) Whalen did not explain that Aylor could withdraw his plea before sentencing; (9) Martin, Aylor's counsel on appeal to the Fourth Circuit, never let Aylor review any of the materials submitted to the appellate court; (10) Martin was ill-informed because he never met with Aylor to discuss the case and written correspondence was an insufficient means of communication; and (11) Martin initially agreed to file for *en banc* review of Aylor's appeal, but then changed his mind and left Aylor with insufficient time to file *pro se*.

In response, the Government argues that: (1) the Fourth Circuit concluded that Aylor had no right or expectation of any future opportunity to cooperate with the Government, and that he cannot relitigate that claim in this case; (2) Aylor's assertions that he was coerced into the plea agreement are belied by the express written plea agreement and by Aylor's statements made under oath to the trial court during the plea colloquy; and (3) most of Aylor's ineffective assistance of counsel claims are either belied by the plea agreement and plea colloquy or fail to show that counsel performed in an objectively unreasonable way so as to cause prejudice such that he would not have pleaded guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Benton*, 532 F.3d 424, 435 (4th Cir. 2008).

The Court agrees with all the Government's positions.

## III.

Aylor cannot relitigate his claim, already made on direct appeal, that the Government breached the plea agreement by not providing him with cooperation credit or offering him a chance to cooperate.

## A.

"It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (internal quotations and citation omitted). A defendant cannot circumvent a proper ruling on a claim raised on direct appeal by re-raising the same claim in a § 2255 motion. *See id.* at 396. An exception may be made if the defendant alleges new evidence or relies on a new rule of criminal procedure. *See Teague v. Lane*, 489 U.S. 288, 307 (1989); *see, e.g.*, *English v. United States*, 998 F.2d 609, 611 (8th Cir. 1993).

**B.**

Here, Aylor's § 2255 Motion attempts to relitigate claims that the Fourth Circuit previously considered and rejected on direct appeal. Aylor argued on appeal that his waiver of appeal was invalid because the Government had breached the plea agreement. *See United States v. Aylor*, Nos. 09-4569 & 09-4577, 2010 WL 1511416, at *2 (4th Cir. Apr. 16, 2010). Necessarily, the Fourth Circuit considered whether the Government had breached the plea agreement in order to determine the validity of Aylor's waiver. *See id*. It concluded "that the plea agreement was not orally supplemented to include a provision requiring the Government to afford Aylor the opportunity to participate in a presentence debriefing." *Id.* In other words, the Fourth Circuit concluded that the Government did not breach the plea agreement. *See id.*

Aylor's claims at this juncture are identical to the claims raised on direct appeal, and he adduces no new evidence to support his claims, nor does he base them on new procedural grounds.[2] Aylor cannot relitigate his breach of plea agreement claims in the instant Motion.

**IV.**

Aylor argues that three of his attorneys provided ineffective assistance of counsel. His arguments are wholly without merit because they show neither deficient performance nor any prejudice to his case.

---

[2] As part of his breach of plea agreement argument, Aylor claims, in a conclusory manner, that the Government acted in bad faith when it did not "make good" on its "offer" of future cooperation. The Court could only review the Government's "bad faith" decision to not move for a downward departure if Aylor could show that the Government's decision was based on an unconstitutional motive, such as racial animus. *See Wade v. United States*, 504 U.S. 181, 185–87 (1992). Aylor asks for an evidentiary hearing to investigate such a motive, but the Court will not grant a hearing to search out a possible illicit motive; some modicum of evidence of bad faith would have to be presented. *Id.* His conclusory allegations are insufficient to make such a showing.

**A.**

A claim of ineffective assistance of counsel in violation of a habeas petitioner's Sixth Amendment rights is examined under the familiar two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*'s first prong, a petitioner must "show that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A petitioner may make such a showing by proving that his counsel "fell below an objective standard of reasonableness" "under prevailing professional norms." *Id.* at 687–88; *see also United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). In other words, the performance of petitioner's counsel must have been outside "the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (citations omitted). Under this prong, the law presumes that a defense attorney was competent, and "[j]udicial scrutiny of counsel's performance must be highly deferential [because i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland*, 466 U.S. at 689.

A habeas petitioner is ordinarily bound by the representations he made under oath during a plea colloquy. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992). That is, absent clear and convincing evidence showing that his sworn representations were somehow inaccurate, untruthful, or involuntary, a petitioner cannot satisfy the first prong of the *Strickland* standard merely by making claims of ineffective assistance that are plainly belied by representations made to the Court during his plea colloquy. *See id.*; *see also Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001).

In any event, even if a habeas petitioner were to succeed in showing that his counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms," *Strickland*, 466 U.S. at 687–88, he must still satisfy the second prong of the *Strickland* test by showing that his counsel's "deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice with respect to his plea of guilty, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. To demonstrate prejudice at the sentencing stage, a defendant must show that, but for counsel's deficient performance, there was at least a reasonable probability of a different sentence. *See Glover v. United States*, 531 U.S. 198, 203–04 (2001); *United States v. Soto*, 10 F. App'x 226, 228 (4th Cir. 2001).

As to a defendant's right to counsel on appeal, a defendant has a right to counsel on his first appeal, but not on subsequent discretionary appeals. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600, 614–15 (1974). The decision of counsel to withdraw from filing an appeal is only reviewable for a constitutional violation when the defendant had a constitutional right to counsel as to the appeal in question. *See Finley*, 481 U.S. at 557. Ineffective assistance of counsel on appeal may also be established by showing that counsel omitted "significant and obvious issues," and instead presented weaker arguments. *United States v. Fox*, No. 94-6710, 1996 WL 359574, at *2 (4th Cir. June 28, 1996).

**B.**

Aylor's ineffective assistance of counsel claims fail to satisfy *Strickland's* two-prong test.

**1.**

His arguments that Mark Carroll provided objectively ineffective assistance are baseless. The suggestions that Carroll coerced him into signing a plea agreement, did not have him

promptly debriefed by the Government, and failed to adequately correspond with him, are belied by the sworn statements Aylor made during his plea hearing. As noted *supra*, he expressly represented to the Court during his plea colloquy that he was satisfied with his counsel's performance, that he did not need additional time to speak with counsel, and that his decision to enter into the plea agreement was entirely voluntary.[3] Absent clear and convincing evidence that these representations were inaccurate, untruthful, or involuntary, Aylor cannot now construct a claim of ineffective assistance of counsel merely by making assertions that contradict sworn statements he made to the Court. *See Fields*, 956 F.2d at 1299; *Beck*, 261 F.3d at 396.

The fact is, Aylor signed a *non-cooperation* plea agreement, clearly making unreasonable any expectation of future opportunities to cooperate. The record indicates that the Government was fully aware of Aylor's desire to cooperate, and does not in the least suggest that Carroll somehow obstructed Aylor's attempts to do so. The unalterable fact is that the Government simply was not interested in Aylor's information.

Aylor's final argument regarding Carroll's performance—that he failed to tell him he could withdraw his guilty plea before sentencing—is equally groundless. As a matter of law, Aylor could *not* withdraw his plea before sentencing; he could do so only with leave of court, and only if he could "show a fair and just reason for requesting the withdrawal." *See* Fed. R. Crim. P. 11(d)(2)(B); *see also United States v. Guerra*, 401 F. App'x 746, 749 (4th Cir. 2010). Here, Aylor has not offered any such "fair and just reason," nor, of course, is there any reason to suppose that the Court would have permitted the plea to be withdrawn.

Assuming *arguendo* that Carroll's performance was somehow objectively unreasonable, Aylor's arguments still lack merit because Aylor fails to even argue, much less show, "that, but

---

[3] Aylor concedes in his Reply to the Government's Response to the Motion to Vacate that he "was just trying to ensure the best possible plea" and therefore made no objections during the plea hearing.

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Indeed, the deal that Aylor received was quite beneficial, given that it likely served to reduce his time in prison by as much as 25 months.[4]

Accordingly, the Court has little difficulty concluding that Carroll's performance was not objectively unreasonable or prejudicial.

**2.**

Aylor's arguments that Whalen provided ineffective assistance of counsel fare no better. For the same reasons that the Fourth Circuit rejected Aylor's appeal—that he had no reasonable expectation of future opportunities to cooperate or to obtain a reduced sentence for his efforts—it was not objectively unreasonable at sentencing, if that indeed was the case, for Whalen to not be fully cognizant of Aylor's unsuccessful cooperation attempts. When a defendant has signed a non-cooperation plea agreement and bound himself to that agreement during his plea colloquy, the history of unsuccessful past discussions with the prosecutor would have little if any relevance to going forward with the sentencing. There would be no reason for counsel to believe that such knowledge would result in a different sentence.[5] Accordingly, Whalen did not act objectively unreasonably when she refused to ask for a continuance before sentencing to explore Aylor's previously unsuccessful attempts to cooperate with the Government.

---

[4] Absent the plea agreement, Aylor's offense level of 24, when combined with a criminal history category of IV, placed him in an advisory custody range of 77-96 months. *See* U.S. Sentencing Guidelines Manual ch. 5, pt. A, sentencing table (2010). Pursuant to the plea agreement, Aylor received a reduction in his score from 24 to 21, which placed him in an advisory custody range of 57-71 months. *See id.* The Court ultimately sentenced Aylor to 71 months—at the high end of the advisory guidelines range.

[5] The Eighth Circuit has found ineffective assistance when counsel's failure to raise material information at sentencing regarding the Government's *actual* breach of a plea agreement likely resulted in the imposition of an increased sentence. *See United States v. Granados*, 168 F.3d 343, 346 (8th Cir. 1999). No breach by the Government is in issue here.

For the same reason, Whalen's performance was not objectively unreasonable when she did not move for an evidentiary hearing to investigate the Government's alleged bad faith. There was, in fact, no good reason why Whalen should have entertained the notion that the Government acted other than in good faith such that an evidentiary hearing would have been necessary or appropriate. Nor can it be said that this Court would have even permitted such a hearing to be held.

Finally, it was not objectively unreasonable if Whalen did not tell Aylor he could withdraw his guilty plea before sentencing because, as with predecessor counsel, he could not simply have withdrawn his plea even if he chose to.

In any event, Aylor again shows no prejudice. He never explicitly argues that, but for Whalen's deficient performance, he would have actually received a reduced sentence, nor is the Court prepared to say that he might have. Whalen's performance was not ineffective, and Aylor was in no way prejudiced by what she did or did not do.

**3.**

As for Attorney Martin, Aylor claims that he was ill-informed and therefore provided ineffective assistance. Aylor does not allege what specific, obvious, material information he might have communicated to Martin that was needed for the appeal, nor has he articulated how such information would have altered the substance of the appeal. It is thus impossible to say whether Martin's performance was objectively unreasonable without knowing what specific information Martin allegedly failed to include. In fact, his correspondence with Aylor may have led him to reasonably conclude that a face-to-face meeting was unnecessary. For the same reason, Aylor is unable to show that Martin's performance caused any prejudice.

To say that Martin provided ineffective assistance when he refused to file for *en banc* review by the Fourth Circuit is also without merit. The right to counsel attaches only to appeals of right, and not to discretionary appeals where the appellate court decides whether or not to review the decision of one of its panels *en banc*. *See Moffitt*, 417 U.S. at 614–15. Aylor had no right to counsel in submitting a petition for *en banc* review, and thus he has no cognizable claim to ineffective assistance of counsel. Martin was not obligated to file for discretionary review if he believed such a filing would have been frivolous. Indeed, the yawning gap in this case remains: What points could Martin have raised that might have had the slightest chance of capturing the *en banc* interest of the appellate court—an eventuality only very rarely granted? Finally, Aylor has not shown that, after Martin withdrew without filing for *en banc* review, Aylor himself attempted to file for review on his own or for an extension of the filing deadline and was rebuffed.

## V.

Rule 11(a) of the Rules Governing § 2255 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court has considered the record in this case and finds that Aylor has not made the requisite showing. Accordingly, the Court denies a certificate of appealability.

## VI.

For the foregoing reasons, Aylor's Motion to Vacate, Set Aside, or Correct Sentence [Paper No. 36] is **DENIED**.

A separate Order will **ISSUE**.

                                                     /s/
                                **PETER J. MESSITTE**
                        **UNITED STATES DISTRICT JUDGE**

**May 26, 2011**